IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DONALD,<br>    Plaintiff,<br><br>  v.<br><br>SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY<br>(SEPTA),<br>    Defendant. | CIVIL ACTION<br><br>NO. 13-0440 |

## MEMORANDUM OPINION

**Tucker, C.J.**                                   July _, 2014

   Presently before the Court is Defendant Southeastern Pennsylvania Transportation Authority's ("Defendant") Second Motion for Summary Judgment (Doc. 15), Plaintiff John Donald's ("Plaintiff") Response in Opposition thereto (Doc. 18), and Defendant's Reply (Doc. 21). Upon consideration of the parties' motions with briefs and exhibits, this Court will grant Defendant's motion as to all of Plaintiff's claims.

**I.  BACKGROUND**

   The instant action stems from Plaintiff's termination as a Southeastern Pennsylvania Transportation Authority ("SEPTA") General Helper. Plaintiff contends that he was fired as retaliation for seeking Family and Medical Leave Act ("FMLA") leave, and for racially discriminatory purposes. Defendant counters that Plaintiff was fired for exhausting his FMLA leave on January 24, 2011, in accordance with the provisions of a collective bargaining

1

agreement which governed the terms and conditions of his employment at SEPTA.  The relevant facts follow.[1]

Plaintiff was employed by SEPTA as a General Helper at its Germantown Bus Depot ("Depot").  Plaintiff worked at SEPTA from September 2007 until January 24, 2011.  Plaintiff and two (2) third class mechanics comprised a small bargaining unit at the Depot represented by TWU, Local 234 ("Local 234"); Plaintiff worked an overnight shift at the Depot from 10:00 pm to 6:30 am.  SEPTA was party to a collective bargaining agreement with Local 234 ("Agreement") that covered the terms and conditions of Plaintiff's employment.  Pursuant to the Agreement, the maximum sick leave to which an employee is entitled during one's entire service with SEPTA is: thirty (30) days for the first six (6) months of service; thirty days for the second six (6) months of service; thirty (30) days for the third six (6) months of service; thirty (30) days for the fourth six (6) months of service; and sixty (60) days at the beginning of each year thereafter, to be used for illness or personal injury which precludes an employee from performing one's regular duties.  (Pl.'s Ex. C, at 23.)  The Agreement states that "[a]ny employee whose absence due to illness or personal injury exhausts the amount of sick leave to which one is entitled under this section will be automatically dropped from Authority service." (Id.)

SEPTA has a written FMLA policy.  (Def.'s Ex. 6, at 1.)  Ameri-Health, a third party contractor, is responsible for administering SEPTA's FMLA program.  Among other things, Ameri-Health makes determinations as to whether SEPTA employees are eligible for FMLA leave, and also keeps track of SEPTA employees' FMLA usage.  Plaintiff requested FMLA

---

[1] This Court agrees with Plaintiff that any reference to Plaintiff's earlier violations of the attendance points policy, and the resulting disciplinary actions taken against him, are irrelevant to the instant motion.

leave in November 2010 regarding his own serious health condition: the installation of a pacemaker. Time off for an employee's own serious condition is treated the same as other sick leave under the Agreement. Stephen Carlisle, Assistant Director of Maintenance at SEPTA's Berridge Shop, was responsible for keeping track of sick time usage for Depot employees. Carlisle testified that he reviewed Plaintiff's attendance in December 2010, and noticed that he only had forty-five (45) days of sick leave remaining. (Carlisle Decl. ¶ 12.) As a result, on December 2, 2010, Carlisle sent Plaintiff a letter advising him that his sick leave would soon expire. (Def.'s Ex. 3A.) This letter also stated that if Plaintiff expired the remaining forty-five (45) sick leave days, he would automatically be dropped from the Authority's service for expiration of sick leave. (Id.) On January 3, 2011, Plaintiff was evaluated by SEPTA's medical department; the department determined that Plaintiff was not to work until further notice, and set a follow-up appointment for February 3, 2011 at 10:00 am. (Pl.'s Ex. I.) On January 4, 2011, Ameri-Health notified Plaintiff that his twelve (12) weeks of FMLA leave would be exhausted as of January 24, 2011.[2] [3] (Pl.'s Ex. H.) On January 13, 2011, Dr. Allan M. Greenspan, Plaintiff's own physician, and the doctor who installed his pacemaker, wrote a letter declaring that Plaintiff was able to return to work, but could not return to driving a bus or other heavy machinery until further testing was done on January 18, 2011. (Pl.'s Ex. S.) Plaintiff testified that he brought this note to his supervisor and SEPTA's medical department. (Pl. Dep. 71:1-9.) Plaintiff was also evaluated a second time by SEPTA's medical department on January 13, 2011. (Pl.'s Ex. I.) The department indicated that Plaintiff would be able to

---

[2] Plaintiff was eligible for additional FMLA leave. Therefore, he was not dropped from the rolls at SEPTA at the expiration of his normal sick leave on January 16, 2011. Wright Decl. ¶ 17.
[3] This same mailing also included an "Employee Fitness to Return to Work Form" which specifically stated that Plaintiff must return the completed form to Ameri-Health Casualty when he returned to work on February 6, 2011. (Id.)

3

return to work on light duty on January 16, 2011, but that he could not operate buses or heavy equipment until he was seen again by the medical department.   Id.

On January 23, 2011, Plaintiff attempted to report to work, and gave his supervisor his doctor's note stating he could return to work with medical restrictions, but was sent home, and told that: (1) he could not come back to work with any restrictions, and (2) he could not come back on light duty.   (Pl.'s Dep. 36:2-16; Pl.'s Ex. O.)   Thereafter, Carlisle testified that upon reviewing Plaintiff's attendance record on January 24, 2011, he discovered that Plaintiff had exhausted his sick leave.   (Carlisle Decl. ¶ 13.)   Consequently, Carlisle sent Plaintiff a letter that same day, advising him that his sick leave was exhausted and he was dropped from the rolls. (Def.'s Ex. 3B.)

At some unspecified point in time, Ryan Clarke, a Physician Assistant at the Albert Einstein Medical Center, wrote a letter noting that Plaintiff was under Dr. Greenspan's care from January 26-27, 2011, and that a permanent pacemaker had been installed during that time. (Def.'s Ex. B9.)   The letter continued that Plaintiff had the following restrictions for six weeks following the implantation: (1) no heavy lifting greater than five pounds, and (2) no raising arm above shoulder.   (Id.)   After six weeks, Plaintiff was permitted to return to full work related activities.   (Id.)

## II.   STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A "genuine" issue exists where there is a "sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party."   Byrne v. Chester County

Hosp., Civ. A. No. 09-889, 2012 WL 410886, at *2 (E.D. Pa. Sept. 19, 2012) (citing Kaucher v. Cnty. Of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). "A factual dispute is 'material' if it might affect the outcome of the case under governing law." Id. All factual doubts should be resolved, and all reasonable inferences drawn, in favor of the nonmoving party. Torretti v. Main Line Hospitals, Inc., 580 F.3d 168, 172 (3d Cir. 2009) (citing DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir. 2007). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986)). The movant is responsible for "informing the court of the basis for its motion for summary judgment and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." Byrne, 2012 WL 410886 at *2 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### III.   DISCUSSION

Defendant argues that its Motion for Summary Judgment should be granted because: (1) Plaintiff had no right to job restoration under the FMLA; (2) Plaintiff cannot establish that his employment was terminated for using FMLA leave; (3) Plaintiff has not adduced any evidence to support a Monell claim; and (4) Plaintiff's employment discrimination claim under 42 U.S.C. § 1983 fails. This Court will consider each of these arguments in turn.

A. FMLA

Courts have traditionally recognized two claims under the FMLA: (1) a claim for interference, and (2) a claim for retaliation.   See Lombardo v. Air Products & Chemicals, Inc., CIVA 05-1120, 2006 WL 1892677, at *3 (E.D. Pa. July 7, 2006); Callison v. City of Philadelphia, CIV.A. 03-CV-3008, 2004 WL 765479, at *3 (E.D. Pa. Mar. 31, 2004) aff'd, 430 F.3d 117 (3d Cir. 2005); see also Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 570-71 (M.D. Pa 2004). In his Response, Plaintiff contends that Defendant interfered with his FMLA rights by terminating him prior to the expiration of his FMLA leave.   Pl's Resp. 14.   In his Complaint, Plaintiff claims that Defendant violated the FMLA by retaliating against him for seeking FMLA leave, and failing to return him to his pre-leave position.   Compl. ¶ 33.

   1. *Interference*

Defendant argues that summary judgment is warranted because Plaintiff was unable to perform the essential functions of his position at the end of his FMLA leave, and therefore had no right to job restoration.   Under the FMLA, an employee is granted a leave of absence of up to twelve (12) workweeks, or sixty (60) workdays, during any twelve (12) month period because of a serious health condition that prohibits him or her from performing the functions of his or her job.   See Smith v. Medpointe Healthcare, Inc., 338 F. App'x 230, 233 (3d Cir. 2009) (citing 29 U.S.C. §§2612, 2614(a)(1)); Smith v. Se. Pennsylvania Transp. Auth., CIV.A.08-2927, 2009 WL 1362559 at *1 (E.D. Pa. May 15, 2009) (citing 29 U.S.C. § 2612(a)(1)(D).   Pursuant to the regulations interpreting the FMLA, if upon return from FMLA leave an "employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another

6

position under the FMLA." Lombardo, 2006 WL 1892677, at *5 (quoting 29 C.F. R. § 825.214(b)). "[I]f an employer terminates an employee during the twelve weeks but the employee would not have been able to return to work at the end of the twelve weeks in any event, the employer has not violated the FMLA." Katekovich v. Team Rent A Car of Pittsburgh, Inc., 36 F. App'x 688, 690-91 (3d Cir. 2002); see also Lombardo, 2006 WL 1892677, at *5 (finding no FMLA violation "even if the employer actually terminated the employee before the FMLA leave period expired.") (quoting Wilcock v. Nat'l Distribs., Civ. No. 00-298-P-H, 2001 U.S. Dist. LEXIS 11413, *12 (D. Me. Aug. 21, 2001)).

Plaintiff began his FMLA leave on November 2, 2010. See Second Wright Decl. ¶ 4; Pl.'s Ex. G; Def.'s Reply Ex. 1. Ameri-Health sent Plaintiff a letter on January 4, 2011 informing him that his FMLA leave would be exhausted as of January 24, 2011.[4] Pl.'s Ex. H. Plaintiff attempted to report back to work on January 23, 2011, but was sent home because he had work restrictions. Wright Decl. ¶ 18; Pl.'s Ex. O. These facts are not in dispute. Parties do dispute, however, when Plaintiff's FMLA leave officially ended. Despite supplemental pleading, the record evidence presented by the parties does not conclusively resolve this issue.[5] This Court

---

[4] This Court agrees with Plaintiff that the second page of this January 4, 2011 letter references a return date of February 6, 2011. See Pl's. Ex. H at P000002. However, this Court disagrees with any inference that this different return date somehow confused Plaintiff as to when his FMLA leave would be exhausted, as Plaintiff's testimony itself illustrates. See Pl. Dep. 67:2-69:2;82:10-19.

[5] As support for its position that Plaintiff had exhausted his FMLA leave, Defendant has presented the Second Declaration of Michael Wright, in which Wright states as follows: "The shift that Mr. Donald was scheduled to start on January 23, 2011 at 10:00 p.m. and ending on January 24, 2011 at 6:30 a.m. was Mr. Donald's last day of FMLA leave according to SEPTA's records. Thus, Mr. Donald exhausted his FMLA leave on January 24, 2011." See Second Wright Decl. ¶ 5. The "SEPTA records" that Wright references appear to be the attendance list created by Ameri-Health, Inc. See Def.'s Reply Ex. 1. This Court agrees with Defendant that this document shows that Plaintiff was out on FMLA leave from November 2, 2010 through January 24, 2011. However, this document also appears to show that Plaintiff's FMLA leave continued through February 3, 2011; therefore, according to this document, Plaintiff's FMLA leave extended almost two weeks after his termination date. Defendant has offered no explanation for these additional days of leave in any of its briefings. Defendant has also offered no other record evidence to support Wright's claim that Plaintiff's last day of FMLA leave would have ended on January 24, 2011 at 6:30 am. Although Plaintiff has provided documentation which supports his claim that he had only utilized

does note, however, that a simple counting of days/shifts appears to support Plaintiff's assertion that he had not exhausted his FMLA leave at the time of his termination.[6]  Nevertheless, whether Plaintiff's FMLA leave would be exhausted as of January 24, 2011 at 6:30 am, or on January 25, 2011 at 6:30 am, is immaterial because he was unable to perform the essential functions of his position at either time.

According to his job description, Plaintiff's routine duties included placing and blocking vehicles.  Pl.'s Ex. B.  Plaintiff also testified that his routine duties included starting buses and fueling them, and that, with regard to fueling buses, he also had to move them.  Pl. Dep. 21:5-11.  Plaintiff continued that he spent about two to three hours per day fueling buses, and that part of his job responsibilities included moving buses to Cornwells Heights from Germantown at least twice a week.  Pl. Dep. 21:20-23; 29:20-30:8.  Plaintiff was also required to maintain a valid commercial license as part of his position.  Def.'s Ex. 2 ¶ 5; Pl. Dep. 8:16-9:1.  Michael Wright additionally testified that driving a bus was one of Plaintiff's primary job responsibilities.  Wright Decl. ¶ 5.  Plaintiff also had not been cleared to drive or otherwise operate a bus upon his return from FMLA

---

fifty-nine (59) days of his FMLA leave as of January 24, 2011 at 6:30 am, his evidence is also unavailing. Plaintiff's proffered evidence, merely described as Leave Incident List, appears to illustrate that Plaintiff took FMLA leave from November 2, 2010 through January 23, 2011.  See Pl.'s Ex. G.  This evidence, however, is devoid of any explanation of who produced it, when it was produced, or any other identifying information.

[6] Plaintiff argues that, as of January 24, 2011 at 6:30 am, he had only used up fifty-nine (59) of his available sixty (60) days of FMLA leave.  According to Plaintiff, "[b]y simply counting the number of shifts Mr. Donald was approved for FMLA leave, one can ascertain that the fifty-ninth shift was the shift beginning on January 23, 2011 at the start of his 8:00 pm to 6:30 am shift, and that the sixtieth shift would have been the shift beginning on January 24, 2011 at 8:00 p.m. and ending on January 25, 2011." Pl.'s Supp. Mem. at 2.  It is reasonable to conclude that Plaintiff's first day of FMLA leave, November 2, 2010, began at the beginning of his 10:00 pm shift; neither party has presented any information to the contrary.  Pursuant to that reasoning, his first day/shift of FMLA leave would run from 10:00 pm on November 2, 2010 to 6:30 am on November 3, 2010.  Continuing with this calculation of FMLA leave would result in Plaintiff's fifty-ninth (59) day/shift of FMLA leave running from January 23, 2011 at 10:00 pm to January 24, 2011 at 6:30 am, and his sixtieth (and final) day/shift of FMLA leave would therefore run from January 24, 2011 at 10:00 pm to January 25, 2011 at 6:30 am.  Following this calculation, as of January 24, 2011, when Stephen Carlisle sent Plaintiff a termination letter because he had exhausted all his allowable sick leave and allowable FMLA leave, it appears that Plaintiff had not, in fact, exhausted his FMLA leave.

leave; he was still under these medical restrictions at that time.[7] Plaintiff also affirmed in his testimony that he was still unable to drive a bus as of January 24, 2011. Pl. Dep. 73:8-11; 74:5-12.

Thus, the record establishes that Plaintiff was unable to perform the essential functions of his job at the end of his FMLA leave. Although Plaintiff argues that driving a bus was only one of his many responsibilities, and he was still able to perform the majority of his duties at the time of his termination, this position is not supported by case law or Department of Labor Regulations.[8] Therefore, because Plaintiff was unable to perform at least one of the essential functions of his position at the time of his termination, this Court will grant Defendant's motion as to Plaintiff's FMLA interference claim.[9] [10]

---

[7] Pl.'s Exs. I,S.

[8] See 29 C.F.R. § 825.123(a) ("An employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is **unable to perform any one of the essential functions of the employee's position**.") (emphasis added); see also Lombardo ("The fact that Lombardo was not restored to his position at the end of his FMLA leave did not infringe his FMLA rights because the record shows that at the end of his allowed leave Lombardo **remained unable to perform at least one of the essential functions of the . . . position** and no reasonable jury could conclude otherwise.") (emphasis added); see also Scott v. UPMC, 09CV1475, 2010 WL 3156130, at *3 (W.D. Pa. Aug. 10, 2010) aff'd, 435 F. App'x 104 (3d Cir. 2011); Yansick v. Temple Univ. Health Sys., CIV.A. 04-4228, 2006 WL 2243178, at *14 (E.D. Pa. July 27, 2006) aff'd, 297 F. App'x 111 (3d Cir. 2008).

[9] Defendant also argues that Plaintiff was unable to perform heavy lifting at the time of his termination, an essential function of his position. As a preliminary matter this Court notes, contrary to Plaintiff's assertion, that it may consider post-termination medical records and information in assessing whether Plaintiff could have performed the essential functions of his position upon his return from FMLA leave. See Lombardo, 2006 WL 1892677 at *6-7 (considering post-termination medical records in denying Plaintiff's FMLA claim).

It is undisputed that one of the physical requirements of Plaintiff's position as a general helper was heavy lifting. See Pl.'s Ex. B. Plaintiff likewise testified that his job required lifting when he assisted the mechanics, and he believed that he had a lifting restriction when he attempted to report back to work. Pl. Dep. 37:3-14. An undated letter from Ryan Clark PA-C notes that Plaintiff was under the care of Dr. Greenspan from January 26, 2011-January 27, 2011, and that during this admission Plaintiff was implanted with a permanent pacemaker for his condition. Def.'s Ex. B9. According to this letter, Plaintiff thereafter was restricted from engaging in heavy lifting greater than five pounds, or raising his arm above his shoulder, for six weeks. Id. Although this Court identifies that the letter from Ryan Clark states that Plaintiff had a heavy lifting restriction for six weeks, this restriction was a **direct result** of the implantation of his permanent pacemaker on January 26, 2011-January 27, 2011. Id. This implantation occurred after his termination, and Defendant has proffered no evidence that, but for this subsequent implantation, Plaintiff would have had this restriction as of January 24, 2011. Although Plaintiff testified that he believed he had a lifting restriction upon his return to work, this testimony does not align with the other record evidence presented. In any regard, Plaintiff's claim must fail because he was was unable to drive buses upon his return from FMLA leave, and

*2. Retaliation*

Next, Defendant argues that Plaintiff's retaliation claim must fail because: (1) Plaintiff cannot make a prima facie case of retaliation under the FMLA, and (2) Plaintiff cannot come forward with any evidence suggesting that SEPTA's reason for terminating his employment, exhaustion of sick leave, was pretext for retaliation.

"Courts analyze FMLA retaliation claims based on circumstantial evidence under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Bracy v. Melmark Inc., CIV.A. 12-3323, 2013 WL 5330147, at *7 (E.D. Pa. Sept. 24, 2013); see also De Luca v. Trustees of Univ. of Pennsylvania, 834 F. Supp. 2d 282, 295 (E.D. Pa. 2011). Under this inquiry:

> (1) the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) if defendant meets its burden of production, the plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination.

Id. (citing McDonnell Douglas, 411 U.S. at 802.).

i. Plaintiff's Prima Facie Case

To establish an FMLA retaliation claim, Plaintiff must prove that: "(1) she invoked her right to FMLA benefits; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the invocation of her rights." Id.

**a.    Adverse Employment Action**

---

therefore was unable to perform an essential function of his job.

[10] In addition, this Court agrees with Defendant that Plaintiff had no right under the FMLA to be restored to a light-duty assignment in lieu of his pre-leave position.  See Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375 (3d Cir.2002)) (The FMLA does not require "an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.").

Defendant concedes that Plaintiff has shown that he asserted rights under the FMLA, but avers that he cannot make a prima facie case of unlawful retaliation because there was no adverse employment action or causation. Plaintiff appears to argue that he suffered an adverse employment decision when he was terminated despite his driving restriction not being a restriction that prevented him from performing his job. In the alternative, Plaintiff argues that even if his driving restriction would have prevented him from performing the essential functions of his job, he attempted to report back to work prior to exhausting his FMLA leave, but was not permitted to return.

"Courts have held that terminating an employee when that employee is unable to return to work is not an adverse employment action." Budhun v. Reading Hosp. & Med. Ctr., 10-CV-06921, 2011 WL 6002024, at *6 (E.D. Pa. Nov. 30, 2011) (citing Katekovich v. Team Rent a Car, Inc., 36 Fed. Appx. 688, 690 (3d Cir.2002)); see also Dogmanits v. Capital Blue Cross, 413 F. Supp.2d 456, 464 (E.D. Pa. 2005). This Court also notes, however, that this proposition has been distinguished by the Eastern District of Pennsylvania in Fleck v. WILMAC Corp., CIV.A. 10-05562, 2011 WL 1899198 (E.D. Pa. May 19, 2011). See also Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 512 (E.D. Pa. 2012). The Fleck court declined to follow the line of reasoning in cases such as Dogmanitis, finding that "it appears to conflate the FMLA's prescriptive rights to restatement and proscriptive right against retaliation." The court then turned to an analysis of Keim v. Nat'l R.R. Passenger Corp., CIV.A. 05-CV-4338, 2007 WL 2155656 (E.D. Pa. July 26, 2007), in which the Keim court noted:

> Certainly, once an employee exceeds the duration of her protected leave, the employer is not obligated by FMLA to keep open the position or to reinstate the employee upon her return. However, the focus in retaliation cases is on the subjective motive of the employer. That [the defendant] may have had a

11

> legitimate basis for its employment decision is not a complete defense to a "proscriptive" FMLA claim. While [the defendant] may generally be justified in terminating Plaintiff because she remained absent at the end of her FMLA leave, this does not necessarily preclude the finding that unlawful considerations may have nevertheless played a determinative role in the particular decision at issue.

Fleck, 2011 WL 1899198 at *10 (quoting Keim, 2007 WL 2155656 at *6) (citations omitted). Thus, following Keim, the Fleck court determined that the plaintiff's "termination could still constitute an adverse action under the FMLA even if she was not entitled to reinstatement under the FMLA." Id. at 10; see also Koller, 850 F. Supp. 2d 511-12. It is undisputed that Plaintiff was terminated after he had used FMLA leave. Therefore, following Fleck, this Court finds that Plaintiff's termination constituted an "adverse employment action" for purposes of this motion.

### b.  Causation

Finding that Plaintiff has established an "adverse employment action," this Court must now consider whether Plaintiff has satisfied the last prong of his prima facie case: that the adverse action was causally related to the invocation of his rights. Plaintiff argues that causation is established through unusually suggestive temporal proximity, in that mere hours passed between Plaintiff's attempt to return from FMLA leave and his termination. A causal connection can be established by showing a temporal proximity or a pattern of antagonism in response to the protected activity. Garvin v. Progressive Cas. Ins. Co., 5:08-CV-3758, 2010 WL 1948593, at *8 (E.D. Pa. May 10, 2010) (citing Coppa v. Am. Soc'y for Testing Materials, No. 04–234, 2005 WL 1124180, at *2 (E.D.Pa. May 11, 2005) (causal connection in FMLA retaliation); see also Walsh v. Wal–Mart Stores, Inc., 200 Fed.Appx. 134, 136–37 (3d Cir.2006) (causal connection in ADA retaliation). "When a plaintiff is relying upon temporal proximity to satisfy her *prima facie* case for the purpose of summary judgment under *McDonnell Douglas,* close temporal proximity

12

can, by itself support a finding of causation." Reinhart v. Mineral Technologies Inc., CIV.A. 05-4203, 2006 WL 4050695, at *11 n.10 (E.D. Pa. Nov. 27, 2006) (citing Jalil v. Avdel Corp., *873* F.2d 701, 708 (3d Cir.1989)); see also Smith v. Allen Health Sys., 302 F.3d 827, 833 (8th Cir.2002) (citation omitted) (stating that the McDonnell Douglas system of proof "requires only a minimal showing before requiring the employer to explain its actions"). In addition, "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' [this] is sufficient standing alone to create an inference of causality and defeat summary judgment." Szostek v. Drexel Univ., CIV.A. 12-2921, 2013 WL 4857989 (E.D. Pa. Sept. 11, 2013) (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir.2007), reconsideration denied, CIV.A. 12-2921, 2013 WL 6667746 (E.D. Pa. Dec. 18, 2013).

As discussed, *supra*, Plaintiff attempted to report back to work from FMLA leave on January 23, 2011, but was turned away. One day later, Stephen Carlisle sent a letter to Plaintiff notifying him that he had been dropped from the attendance rolls.[11] This Court finds this short passage of time "unusually suggestive," and that it, by itself, supports a finding of causation.

                ii.      Defendant's Legitimate Reason

The next step in the McDonnell-Douglas analysis is for Defendant to proffer a legitimate reason for its actions. Defendant contends that Plaintiff had exhausted his sick leave, and was therefore terminated pursuant to the Agreement.

It is undisputed that the Agreement provides that "[a]ny employee whose absence due to illness or personal injury exhausts the amount of sick leave to which one is entitled under this

---

[11] Defendant argues that Plaintiff's FMLA leave was exhausted on January 24, 2011, and therefore the timing of Plaintiff's termination bears no relation to a retaliation claim. However, as discussed, *supra*, the Court notes that there is still a lack of clarity on the issue of whether Plaintiff had actually exhausted his FMLA leave prior to his termination. In any regard, Plaintiff reported back to work on January 23, 2011, before his FMLA leave was set to expire, was sent home, and was subsequently terminated on January 24, 2011.

13

section will be automatically dropped from the Authority service." Def.'s SOF 9; Pl.'s Resp. SOF 9; Def.'s Ex. 2A, at 24.[12] Furthermore, it is undisputed between the parties that SEPTA notified Plaintiff on December, 2, 2010 that he had forty-five (45) days of sick leave remaining, and, thus, Plaintiff's sick leave would expire on January 16, 2011. Def.'s SOF ¶ 17; Pl.'s Resp. SOF ¶ 17. Record evidence shows that Plaintiff did exhaust his sick leave, and he has provided no evidence that counters this fact. See Wright Decl. ¶ 22. This Court will therefore infer for purposes of this motion that Plaintiff exhausted his sick leave. Pursuant to the Agreement, Defendant was therefore entitled to automatically drop Plaintiff from the rolls. Thus, this Court agrees with Defendant that it has proffered a legitimate reason for terminating Plaintiff's employment.

### iii. Pretext

Last, the burden is again on Plaintiff to prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. The burden is thus on the plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Myles v. Univ. of Pennsylvania Health Sys., CIV.A. 10-4118, 2011 WL 6150638 (E.D. Pa. Dec. 12, 2011) (quoting Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 136 (3d Cir.2004). To satisfy the first prong, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken," but rather "must demonstrate such weaknesses,

---

[12] Under the Agreement, sick leave and FMLA leave are treated as two separate processes. See Agreement at 26 ("Eligible employees who use FMLA leave for their own serious health condition . . . will be required to utilize accrued and unused sick leave concurrently with FMLA leave."). In addition, sick leave and FMLA leave are governed by two separate sections of the Agreement. Id.

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. (quoting Ezold v. Wolf, Block, Schorr & Solis–Cohen, 983 F.2d 509, 531 (3d Cir.1992)). The first prong, however, does not require the plaintiff to "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, ... nor produce additional evidence beyond her prima facie case [.]" Baltuskonis v. US Airways, Inc., 60 F. Supp. 2d 445, 449 (E.D. Pa. 1999) (quoting Simpson v. Kay Jewelers, Div. Of Sterling, Inc., 142 F.3d 639, 644 (3d Cir.1998)) (internal quotations omitted). Under the second prong, a plaintiff may avoid summary judgment by showing his or her employer "(1) ... previously discriminated against the plaintiff, (2) ... discriminated against other people who engaged in the same protected activity as plaintiff or has discriminated against other people within another protected class or (3) ... treated more favorably similarly situated persons who did not engage in plaintiff's protected activity." Id. (quoting Atchison v. Sears, 666 F.Supp.2d 477, 495 (E.D.Pa.2009)).

Plaintiff avers that Defendant's reason for his termination is pretextual because: (1) SEPTA's FMLA manager requested that Plaintiff be given extra FMLA time; (2) at least with respect to his race discrimination claim, other employees outside his protected class were treated more favorably; and (3) that even though Defendant has maintained that it terminated Plaintiff because he exhausted sick leave, its reasons for not allowing his return have shifted.

### a. Extra FMLA Time

Plaintiff argues that SEPTA FMLA Manager Vicki Duggan's request for extension of Plaintiff's FMLA leave shows that Defendant's reason for his termination was pretextual.

15

Plaintiff refers to his Exhibit J, which appears to be a Request Notes List maintained by SEPTA. Pl.'s Ex. J. Pursuant to a plain reading of the "Note Summary" portion of the document, on December 20, 2010, Duggan sent an email inquiring when Plaintiff's FMLA leave was set to expire. On January 4, 2011, an exchange seems to occur wherein Duggan states, "Mr. Donald is still out of work. . . . Please extend his FMLA to 2/3. Also, can you update us on how much FMLA time he will have left (if any) as of 2/3?" Id. Although this evidence does appear relevant to Plaintiff's FMLA leave, it does nothing to discredit Defendant's claim that it terminated Plaintiff for exhaustion of his sick leave pursuant to the Agreement. The fact remains that, under the Agreement, sick leave and FMLA leave are treated as two separate processes, and Plaintiff has offered no evidence to show that he had not exhausted his sick leave as of his termination date. This evidence thus fails to show that Defendant's proffered explanation that it fired Plaintiff for expiration of his sick leave is pretextual.

### b. Race Discrimination

Plaintiff next avers that, at least with respect to his race discrimination claim, other employees outside his protected class were treated more favorably. Because Plaintiff has provided his support for this position under his separate § 1983 claim, this Court will address this argument, *infra*. In any respect, for the reasons discussed in this later section, this Court finds that Plaintiff has not carried his burden as to proffering evidence to establish that his termination was pretextual under this argument, either.

### c. Inconsistent Explanations

Last, Plaintiff argues that although Defendant has consistently stated that it terminated him because he had exhausted his sick leave, Defendant has conversely given a number of

reasons for why it did not allow him to return from FMLA leave. Again, this Court finds that Plaintiff's argument is not on point, in that it does nothing to challenge Defendant's explanation that Plaintiff was terminated for exhausting his sick leave in accord with the Agreement. Therefore, this Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendant's proffered reason was a pretext for discrimination, and will grant summary judgment as to Plaintiff's FMLA retaliation claim.

B. Monell Claim

Defendant further contends that Plaintiff has not adduced any evidence to support a Monell claim. In Count II of his Complaint, Plaintiff alleges that SEPTA had an unconstitutional policy, custom, or practice which resulted in Plaintiff's termination. See Compl. ¶¶ 40-42. This Court agrees with Defendant that this appears to be a claim under Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978). Plaintiff, however, has failed to respond to Defendant's challenge; he does not make reference to Monell, municipal liability, or any of the arguments that Defendant posits in challenge to this count in his Response. Therefore, this Court will grant Defendant's motion as to Count II of Plaintiff's Complaint as unopposed. See Local R. Civ. P. 7.1(c); Fed.R.Civ.P. 56(c); see also Floyd v. Air & Liquid Sys. Corp., MDL 875, 2012 WL 975359 (E.D. Pa. Feb. 8, 2012) ("As a preliminary matter, to the extent that Defendant Goulds's motion for summary judgment was unopposed by Plaintiffs as to certain claims, the Court grants Defendant's motion as unopposed.").

C. Equal Protection

In Count III of his Complaint, Plaintiff alleges that Defendant, acting under color of state law, violated his constitutional rights under 42 U.S.C. § 1983 by, among other things, denying

Plaintiff equal protection of the law. This Court construes this count as an equal protection clause claim under § 1983. Defendant avers that summary judgment should be granted on this claim because: (1) Plaintiff cannot show a prima facie case of race discrimination, and (2) even if he could, SEPTA has articulated a legitimate, non-pretextual, reason for his termination.

"The Equal Protection Clause requires that all people similarly situated be treated alike." Ryan v. Scism, 474 F. App'x 49, 52 (3d Cir. 2012) cert. denied, 133 S. Ct. 377, 184 L. Ed. 2d 223 (U.S. 2012) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated." Warenecki v. City of Philadelphia, CIV.A. 10-1450, 2010 WL 4344558 (E.D. Pa. Nov. 3, 2010) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir.2009)); see also Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir.1990)); White v. Sch. Dist. of Philadelphia, CIV.A. 05-0092, 2008 WL 2502137, at *7 (E.D. Pa. June 19, 2008) aff'd, 326 F. App'x 102 (3d Cir. 2009). Under the Equal Protection Clause, persons are similarly situated when they are "alike in all relevant aspects." Suber v. Guinta, 927 F. Supp. 2d 184, 202 (E.D. Pa. 2013) (quoting Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir.2008)).

Plaintiff alleges that he has established the inference of unlawful discrimination by providing evidence that two Caucasian employees, AJ Vasta and Christopher Hopkins, were permitted to work on light duty assignments upon return from their FMLA leave, and were

therefore not required to deplete their sick leave as he was. Plaintiff avers that these similarly-situated employees received this more favorable treatment based on race. As support for this contention, Plaintiff testified that: (1) these two individuals were out on FMLA leave "maybe for a day or two" before they were put on light duty; (2) he believed both of these employees were injured on the job; (3) Hopkins and Vasta were both shown favoritism, and made comments to Plaintiff about how he was treated; (4) Hopkins told him "they're picking on you because you're the black guy;" and (5) he felt he was not offered overtime when others were, work was distributed unequally, and that there was differential treatment with respect to discipline. Pl. Dep 31:3-23; 87:8-100:19; 109; 116:12-117:8.

     Although Plaintiff's testimony is moving, it fails to overcome the record evidence that shows Hopkins and Vasta were not similarly situated SEPTA employees. For one, Michael Wright testified that although Christopher Hopkins was allowed to return to work with certain work restrictions, he was: (1) on FMLA leave as a result of a work-related injury, and (2) had not exhausted his sick leave under the Agreement. Pursuant to the Agreement, "[t]ime lost by an employee because of compensable injuries, i.e., injuries which one receives while on duty, will not be charged against one's sick leave." Pl.'s Ex. C, at 24. Therefore it goes without saying that Plaintiff, who took FMLA leave for his own serious health condition and had exhausted his sick leave, is "not alike in all relevant respects" to Hopkins, an employee who was out of work due to a work injury, and had not exhausted his sick leave.[13] In addition, Plaintiff has provided no evidence that Vasta had exhausted his sick leave, and, in fact, Plaintiff testified that he was also out of work as a result of an on-the-job injury. See Pl. Dep. 31:19-23; 37:22-38:1; 112:18-23; see

---

[13] In fact, Hopkins could not have exhausted his sick leave for his injury because his work injury would not have been charged against his sick leave under the Agreement.

19

also Wright Dep. ¶ 21. Carlisle also testified that other Local 234 SEPTA employees who had exhausted their sick leave had been dropped from the rolls, and Michael Wright testified that four (4) Caucasians and two (2) African-Americans had been dropped from the rolls for expiration of sick leave from 2006 to 2011. Carlisle Decl. ¶ 17; Wright Dep. ¶ 14. Thus, because Vasta and Hopkins are not similarly situated employees, and Plaintiff has failed to present any other evidence to show that similarly situated employees received different treatment, his equal protection claim must fail. See, e.g., Shuman, 422 F.3d 141 (granting summary judgment on equal protection claim because Plaintiff had failed to show differential treatment for similarly-situated employees); Dickinson v. Millersville Univ. of Pennsylvania, CIV.A. 13-5022, 2014 WL 1327610, at *5 (E.D. Pa. Apr. 3, 2014) ("Because Dickinson presented no evidence that he was treated differently from any other similarly situated individuals, he has failed to carry his burden as to the § 1983 claim against the Individual Defendants.").

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is granted as to all counts of Plaintiff's Complaint.[14] An appropriate Order follows.

---

[14] This Court is not persuaded, however, by Defendant's argument that Plaintiff's action is time barred. Plaintiff was notified of his termination on January 24, 2011, and filed the instant action on January 24, 2013, two years later.